## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MILAGROS NIEVES RÍOS; VÍCTOR J. RIVERA NIEVES; VICMARIE RIVERA NIEVES; VÍCTOR M. RIVERA LÓPEZ; ALEXANDER RIVERA NIEVES; LUZ M. RIVERA CALDERO, | Civil No. 24-1108 |
| Plaintiffs, | |
| v. | |
| [1] MENNONITE GENERAL HOSPITAL, INC. D/B/A HOSPITAL GENERAL MENONITA, INC. D/B/A HOSPITAL MENONITA CAYEY AND/OR CENTRO MÉDICO MENONITA CAYEY; [2] THE MEDICAL PROTECTIVE COMPANY; [3] CARLOS J. FUENTES MATOS D/B/A FUNERARIA VALLE DE PAZ; [4] COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO; [5] JARDÍN DEL EDÉN, INC.; [6] UNIVERSAL INSURANCE COMPANY; [7] UNKOWN INSURANCE COMPANIES A, B, & C; and [8] UNKOWN PERSONS X, Y, y Z, | JURY TRIAL REQUESTED |
| Defendants | |

## COMPLAINT

### TO THE HONORABLE COURT:

COME NOW plaintiffs Milagros Nieves-Ríos, Víctor J. Rivera-Nieves, Vicmarie Rivera-Nieves, Víctor M. Rivera-López, Alexander Rivera-Nieves, and Luz M. Rivera-Caldero, together referred to hereinafter as the "Plaintiffs", through the undersigned attorney, and respectfully state and pray as follows:

## I.    INTRODUCTION

1. In this diversity tort suit, the unwilling victims of codefendants' negligence seek redress for the ensuing damages resulting from the profound emotional anguish, as well as special economic damages, all of which the family members of the late Mr. Víctor Manuel Rivera-Caldero (hereinafter, "**Mr. Rivera-Caldero**" – R.I.P.) have endured and continue to endure.

2. These damages are attributable to the acts and omissions of the codefendants, (i) who delivered Mr. Rivera-Caldero's body to an unauthorized funeral home, whereupon (ii) they proceeded to cremate his remains without obtaining any authorization from his relatives.

3. By depriving the plaintiffs of the opportunity to bid farewell to Mr. Rivera-Caldero with the dignity and respect deserved, through a memorial service and proper burial of his remains, codefendants have inflicted pain and suffering upon the plaintiffs, irreparably tarnishing the memory of their beloved family member.

## II. JURISDICTION AND VENUE

4. This Honorable Court has jurisdiction to entertain this case pursuant to the provisions of 28 U.S.C. § 1332, as there is complete diversity between Plaintiffs and codefendants.

5. The relief requested in this suit far exceeds the jurisdictional amount of $75,000, exclusive of interests, costs, and punitive damages.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in this Honorable Court because the acts and omissions giving rise to the Complaint occurred  within this District.

### III. THE PARTIES

7.  At the time of filing this complaint, Mrs. Milagros Nieves-Ríos (hereinafter, "**Mrs. Nieves-Ríos**") is domiciled and lives in Lorain, Ohio. Mrs. Nieves-Ríos is of legal age and widow of Mr. Rivera-Caldero.

8.  At the time of filing this complaint, Mr. Víctor J. Rivera Nieves (hereinafter, "**Víctor Javier**") is domiciled and lives in Lorain, Ohio. Víctor Javier is of legal age and the son of Mr. Rivera-Caldero.

9.  At the time of filing this complaint, Mrs. Vicmarie Rivera Nieves (hereinafter, "**Vicmarie**") is domiciled and lives in Lorain, Ohio. Vicmarie is the daughter of Mr. Rivera-Caldero.

10.   At the time of filing this complaint, Mr. Víctor M. Rivera López (hereinafter, "**Víctor Manuel Jr.**"), is domiciled and lives in Philadelphia, PA. Víctor Manuel Jr. is the son of Mr. Rivera-Caldero.

11.   At the time of filing this complaint, Mr. Alexander Rivera Nieves (hereinafter, "**Alexander**") is domiciled and lives in Lorain, OH. Alexander is Mr. Rivera-Caldero's son.

12.   At the time of filing this complaint, Mrs. Luz M. Rivera Caldero (hereinafter, "**Luz**") is domiciled and lives in Haines City, Florida. Luz is Mr. Rivera-Caldero's sister.

13.   Mennonite General Hospital, Inc. D/B/A Menonita General Hospital, Inc. D/B/A Menonita Cayey Hospital and/or Menonita Cayey Medical Center (hereinafter, "**Mennonite Hospital**") is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico. At all times material to the Complaint, Mennonite Hospital was operating as a hospital in the Municipality

3

of Cayey. Its physical address is Carr. 14 Km. 12.1 Barrio Rincón, Sector Lomas Cayey, P.R. 00737. Its postal address is Apartado 1650 Cidra, P.R. 00739. According to information available at the Puerto Rico State Department website, the corporation's registration number is 8394.

14. The employees, agents, administrators, owners, directors, doctors, nurses, escorts, transporters, technicians, caregivers and/or subcontractors of Mennonite Hospital failed to carry out an accurate and timely verification and identification before delivering the body of Mr. Rivera-Caldero, and they negligently delivered his body to the wrong funeral home, contributing to and/or causing his body to be subsequently cremated without authorization of his relatives, and causing the damages claimed here.

15. The Medical Protective Company (hereinafter, "**Medical Protective**") is an insurance company organized pursuant to the laws of the Commonwealth of Puerto Rico who at all material times alleged herein, was the primary and/or excess liability insurer of one of the defendants and/or all defendants, including, but not limited to, Mennonite Hospital and Unknown Persons X, Y, and Z, had issued and in full in force one or more policies insuring the claims referred to herein and is directly liable to the plaintiffs for the damages claimed.

16. Carlos J. Fuentes-Matos D/B/A Valle De Paz Funeral Home (hereinafter, "**Valle De Paz**"). At all times material in the Complaint, Valle De Paz provided funeral services to the general public, including  burials, cremations, exhumations, and tombstones, among others. The physical address of its designated office is Carr. 7733 km 1.8, Bo. Sud, Cidra, Puerto Rico 00739. Upon

information and belief, its owner is Mr. Carlos Javier Fuentes-Matos. His known telephone number is (787)-714-3311.

17.     The employees, agents, administrators, owners, directors, doctors, technicians, transporters and/or subcontractors of Valle De Paz failed to carry out an accurate and timely verification and identification before receiving Mr. Rivera-Caldero's body and negligently proceeded to receive his body without having been authorized by his family to do so, prematurely proceeding with his cremation, without authorization, and causing the damages claimed here.

18.     Cooperativa De Seguros Múltiples De Puerto Rico (hereinafter, "**Seguros Múltiples**") is an insurance company organized pursuant to the laws of the Commonwealth of Puerto Rico who at all material times alleged herein, was the primary and/or excess liability insurer of some and/or all defendants, including, but not limited to, Carlos J. Fuentes-Matos D/B/A Valle De Paz and Unknown Persons X, Y, and Z , and had issued and in full force and effect one or more policies insuring the claims referred to herein and is directly liable to the plaintiffs for the damages claimed.

19.     Jardín del Edén, Inc. (hereinafter, "**Jardín del Edén**") is a domestic corporation authorized to do business in Puerto Rico and on the date of the events subject of this  this action, t provided cremation services, among others. The physical address of its designated office is at Yardley Place #18 Santurce, Puerto Rico 00911. Upon information and belief, its owner is Mr. Nell N. Blanco. His known telephone number is (787) 286-4648.

20.     At all times material to the Complaint, the provisions of Law No. 258 of 2012, as amended, *Puerto Rico Funeral Services Law*, were applicable to Valle De Paz and Jardín del Edén.

21. Co-defendant **Universal Insurance Company** ("Universal") is an insurance company organized pursuant to the laws of the Commonwealth of Puerto Rico who at all material times alleged herein, was the primary and/or excess liability insurer of one, some  and/or all defendants, including, but not limited to, Jardín del Edén, Inc. and Unknown Persons X, Y, y Z, and had issued and in full force and effect one or more policies insuring the claims referred to herein and is directly liable to the plaintiffs for the damages claimed.

22.     **Unknown Insurance Companies A, B, & C** ("Insurance Companies A, B & C"), whose names are currently unknown to the Plaintiff, is/are insurers organized pursuant to the laws of the Commonwealth of Puerto Rico, who at all material times alleged herein, were the primary and/or excess liability insurers, respectively, of  any or all of the above co-defendants, and had issued and in full force and effect one or more policies insuring some or all of the defendants for the claims referred to herein. Those insurance policies provide coverage for the damages claimed in this suit.

23.     Because their identities are unknown at this time, the fictitious names **Unknown Persons X, Y, and Z** refer to any individuals  or legal entities, including, but not limited to, group of persons and/or corporations (agents, administrators, subcontractors, technicians, nurses, and specialists) who offered transportation services, escort services, corpse transportation, corpse management, and cremation; as well as any natural person or entity employed

or engaged by Mennonite Hospital and/or Valle De Paz, and/or Jardín del Eden, and/or Mennonite Hospital health professionals, Valle De Paz and Jardín del Edén, social or corporate entities, insurance and/or re-insurance companies, who due to their relationship, actions or omissions in connection with the facts of this case, or their contractual relationships with any of the co-defendants, are obligated by law or otherwise to compensate Plaintiffs, jointly and severally, in whole or in part, for the damages claimed in this case.

24.     Unknown Persons X, Y, and Z also include the respective spouses of any of the codefendants and their respective legal community partnerships. Upon information and belief, these unknown persons negligently failed to discharge their responsibilities in connection to the handling of Mr. Rivera-Caldero's body, which caused or contributed to the consequent damages suffered by the plaintiffs. Since the precise identity of these co-defendants is unknown, they are designated with the fictitious names indicated above, which will be substituted by the correct ones as soon as they are known.

## IV. THE FACTS

25.     All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

26.     Mr. Rivera-Caldero was born on October 15, 1943.

27.     During that time, he saw his children grow, get married, he saw his grandchildren born and he enjoyed the luxury of spoiling them and giving them his unconditional love.

28.     Mr. Rivera-Caldero was a constant presence in the lives of his children, grandchildren, and his siblings; until the day he died, he was always the cornerstone of his family.

29.     On May 2, 2022, Mr. Rivera-Caldero went to the Mennonite Hospital to undergo an outpatient surgical procedure.

30.     After the surgical procedure was completed, while waiting in the recovery room, Mr. Rivera-Caldero apparently suffered complications that resulted in his death.

31.     According to the medical records of the Mennonite Hospital, Mr. Rivera-Caldero died on May 2, 2022, at 11:20 p.m.

32.     The doctors and staff of the Mennonite Hospital failed to notify the relatives of Mr. Rivera-Caldero's death until 8:00 a.m. of the next day.

33.     It took Mennonite Hospital almost 8 hours to notify the family members about Mr. Rivera-Caldero's death.

34.     Once the family members were notified, they arrived at Mennonite Hospital on May 3, 2022.

35.     On May 3, 2022, Mrs. Nieves-Ríos signed an *Authorization for Pickup* through which she authorized the transfer of Mr. Rivera-Caldero from Mennonite Hospital to —solely and exclusively— the Hernández Funeral Home located in the Municipality of Corozal, Puerto Rico.

36.     Likewise, on May 3, 2022, Mrs. Nieves-Ríos completed and signed Part B of the *Corpse Delivery Sheet* regarding the *Family Authorization to Request Funeral Services*, through which she authorized the transfer of the body of Mr.

Rivera-Caldero from Mennonite Hospital to —solely and exclusively— Hernández Funeral Home located in the Municipality of Corozal, Puerto Rico.

37.     In the *Corpse Delivery Sheet* provided to Mrs. Nieves-Ríos by Mennonite Hospital, she was informed that *"[t]he relatives will choose the funeral home of their choice, which will pick up the body and take care of the requested service. Mennonite General Hospital, Inc. will in no way intervene in such decision."*

38.     Upon information and belief, as of May 2, 3 and 4, 2022, Dr. María A. Uzcategui-Santos was an employee of Mennonite Hospital and/or had been granted privileges by the Hospital.

39.     According to Mr. Rivera-Caldero's medical record, Mennonite Hospital staff and/or Dr. María A. Uzcategui-Santos did not seek or obtain from the Death Division of the Demographic Registry of Puerto Rico a Transit Permit within Puerto Rico to transport Mr. Rivera-Caldero's body to the Hernández Funeral Home until May 4, 2022.

40.     On May 4, 2022, the Death Division of the Demographic Registry of Puerto Rico issued the Transit Permit within Puerto Rico – permit number T-2022-002720 – to transport Mr. Rivera-Caldero's body from Mennonite Hospital to the Hernández Funeral Home.

41.     Thus, on May 4, 2022, at 3:58 p.m., the person in charge at Hernández Funeral Home - Mrs. María del Carmen López-Vázquez - appeared at Mennonite Hospital to pick up Mr. Rivera-Caldero's body, as authorized by Mrs. Nieves-Ríos.

42.     Upon arrival, Mrs. Jarinet Ramos-Santos, of Mennonite Hospital, gave Mrs. López-Vázquez the *Corpse Delivery Form* so that in Part C she could certify her identity as well as the identity of the body that would be collected.

43.     Once the form was completed, Mrs. López-Vázquez was escorted by a gentleman identified as a Mennonite Hospital staff member to where the body to be collected was held.

44.     There, Mrs. López-Vázquez immediately noticed that the identification "tag" attached to the body bag indicated "**Víctor Manuel Malavé**" and not "Víctor Manuel Rivera Caldero", and she pointed this out to Mennonite Hospital staff.

45.     Mrs. López-Vázquez personally knew and could properly identify Mr. Rivera-Caldero, so she proceeded to request that the body bag be opened.

46.     The escort at Mennonite Hospital indicated that he needed authorization from the supervisor and, after obtaining it, the body bag was opened; it was then confirmed that in fact the body located there was not that of Mr. Rivera-Caldero.

47.     The body located inside the bag had another "tag" located on its chest that indicated "Víctor Manuel Malavé."

48.     Given the situation and confronted by Mrs. López-Vázquez of Hernández Funeral Home, the supervisor of the Mennonite Hospital admitted that Mr. Rivera-Caldero's body had been delivered to the incorrect funeral home.

49.     Mrs. López-Vázquez demanded to be informed of the identity of the funeral home to which Mr. Rivera-Caldero's body had been delivered, and the

supervisor at Mennonite Hospital told her that it had been incorrectly delivered to Valle De Paz.

50.      At around 4:30 p.m., Mrs. López-Vázquez and staff from the Hernández Funeral Home proceeded to communicate with Valle De Paz and, after several attempts, they managed to speak with Mr. Carlos Javier Fuentes-Matos, whom after informing him about the situation, was asked to return Mr. Rivera-Caldero's body.

51.       However, even though at that time less than 48 hours had passed since Mr. Rivera-Caldero had died, Mr. Carlos Javier Fuentes-Matos informed the Hernández Funeral Home that his body had already been cremated.

52.      Pursuant to Article 9.06 of Law No. 258 of September 15, 2012, as amended, known as the *Puerto Rico Funeral Services Law*, it is mandated that a minimum of forty-eight (48) hours must have transpired since the decease of an individual before cremation can be conducted.

53.      Mr. Rivera-Caldero's corpse did not show any signs of rapid decomposition.

54.      No Prosecutor of the Commonwealth of Puerto Rico requested authorization to proceed with the cremation of the body of Mr. Rivera-Caldero.

55.      No family member authorized the cremation of Mr. Rivera-Caldero's body.

56.      Confronted with this irrefutable facts, Mr. Carlos Javier Fuentes-Matos first attempted to cover up the situation by suggesting that the Hernández Funeral Home convince Mr. Rivera-Caldero's relatives to retroactively sign the authorization documents necessary for the cremation.

11

57.    Given the refusal of the Hernández Funeral Home to act as suggested by Mr. Carlos Javier Fuentes-Matos, he then attempted to evade his responsibility by adopting a defiant attitude.

58.    In the meantime, at approximately 5:00 p.m. on May 4, 2022, staff from the Mennonite Hospital contacted Mr. Rivera-Caldero's relatives and reported that his body had been delivered to the incorrect funeral home.

59.    Given their disbelief and state of shock, the relatives demanded that Mennonite Hospital take the necessary measures so that Mr. Rivera-Caldero's body could be returned, in order for them to carry out a dignified memorial service and burial of his body.

60.    As if that was not enough, in response to the demands of Mr. Rivera-Caldero's relatives, the response of the representative of the Mennonite Hospital was: *"we have another 'little problem'; his body has already been cremated"*.

61.    By 5:00 p.m. on May 4, 2022, the Puerto Rico Forensic Sciences Institute had not issued a cremation authorization slip in connection with Mr. Rivera-Caldero.

62.    By 5:00 p.m. on May 4, 2022, the Demographic Registry of Puerto Rico had not granted a cremation permit in connection with Mr. Rivera-Caldero.

63.    Valle De Paz delivered Mr. Rivera-Caldero's body to Jardín de Edén cremation facilities, who in turn proceeded to carry out the cremation, prior to the required 48 hours timeframe, and without having verified the identity of the body.

64.    The gross negligence of the Mennonite Hospital, Valle De Paz and Jardín de Edén deprived the plaintiffs from carrying out a dignified memorial

12

service and burial of Mr. Rivera-Caldero's body in accordance with their religious beliefs.

65.     Even in the face of the deep pain that said deprivation had caused the plaintiffs, they took steps to at least obtain his ashes.

66.     As if the above had not been enough, the staff at Valle De Paz refused to deliver Mr. Rivera-Caldero's ashes unless the relatives  paid the amount of $2,500.00. That is, Valle De Paz demanded payment for an unauthorized cremation service, much less contracted by them, as a condition for the ashes to be delivered.

67.     It was not until August 2, 2022, that, after a legal communication was notified, that the staff of Valle De Paz delivered a black box – which they indicated contained Mr. Rivera-Caldero's ashes – identified on the outside as "*Victor Manuel Rivera Caldero; Case Received as Victor M. Malavé.*"

68.     At the time of delivery, the staff at Valle De Paz could not deliver the corresponding cremation certificate.

69.     The situation described above caused the plaintiffs to not have been able to obtain a death certificate issued by the Demographic Registry of Puerto Rico.

70.     Mr. Rivera-Caldero always told the plaintiffs that his wish was to be buried, and he expressly reiterated that he did not want his body to be cremated.

71.     The deprivation of being able to carry out Mr. Rivera-Caldero's will, as well as saying goodbye and burying his body in accordance with his religious beliefs, has been one of the most difficult, painful, and traumatic life experiences for the plaintiffs.

72.     There is not a single day that goes by without the plaintiffs longing with suffering, pain, and sadness for the opportunity to carry out Mr. Rivera-Caldero's will, as well as to say goodbye and bury his body in accordance with their religious beliefs.

73.     Today and for the rest of their lives, the causes and ways in which Mr. Rivera-Caldero's body was cremated is and will always be a cause of anguish, restlessness, with feelings of helplessness and despair for the plaintiffs.

74.     The plaintiffs have had to deal with depressive symptoms as a consequence of the circumstances surrounding Mr. Rivera-Caldero's unauthorized cremation.

75.     From May 4, 2022, until today, plaintiffs have been dealing with the emotional disruption caused by the defendants' negligent actions and omissions.

76.     The damages suffered by the plaintiffs are of a continuing nature.

## A. EXTRAJUDICIAL COMMUNICATIONS AND STATE COURT PROCEEDINGS

77.     All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

78.     On May 12, 2022, plaintiffs notified by personal delivery an extrajudicial claim and "Litigation-Hold Notice" to Mennonite Hospital, announcing their intention to file a legal action against it and warning of their duty to preserve all information and evidence related to the circumstances surrounding the delivery of Mr. Rivera-Caldero's body to the incorrect funeral home.

79.     On May 16, 2022, plaintiffs notified by personal delivery an extrajudicial claim and "Litigation-Hold Notice" to Valle de Paz, announcing their intention to file a legal action against it and warning of their duty to preserve all information and evidence related to the circumstances surrounding the unauthorized cremation of Mr. Rivera-Caldero's body.

80.     On July 25, 2022, plaintiffs notified by email a second "Litigation-Hold Notice" to Valle de Paz, warning of their duty to preserve all information and evidence related to the circumstances surrounding the unauthorized cremation of the body of Mr. Rivera-Caldero, including the ashes.

81.     On December 7, 2021, through a judicial complaint filed in the Puerto Rico Court of First Instance, civil case no. CG2022CV03104, the plaintiffs tolled the statute of limitations as to their claims against all codefendants.

83.     Due to the negligent acts and omissions of the codefendants, the plaintiffs were unable to obtain a death certificate from the Demographic Registry of Puerto Rico. Consequently, on December 15, 2022, a judicial *Ex-Parte* Petition was filed in the Puerto Rico Court of First Instance, under civil case no. BY2022CV06394.

**VI. CAUSES OF ACTION**
**A. FIRST CAUSE OF ACTION:**
**Negligence and Vicarious Liability**

84.     All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

85.     The damages suffered by the plaintiffs were caused by the negligent acts and omissions of the staff, employees and/or medical practitioners who

offered services at the Mennonite Hospital, Valle de Paz and Jardín del Edén, as well as the remaining co-defendants.

86.    When handling Mr. Rivera-Caldero's body, the staff of Mennonite Hospital, Valle de Paz and Jardín del Edén, their employees and the other co-defendants failed to comply with basic rules established in the applicable regulations of the Puerto Rico Department of Health, as well as the internal policies, procedures and protocols of Mennonite Hospital, Valle de Paz and Jardín del Edén.

87.    Mennonite Hospital, Valle de Paz and Jardín del Edén are vicariously liable for the negligent acts and omissions of the physicians, staff and/or employees responsible for the events on which the action is predicated, as well as directly for their own acts and omissions by not adopting or putting into force internal regulations, protocols, policies, procedures and/or guides for the management of Mr. Rivera-Caldero's body.

88.    The co-defendants are liable for negligent verification of the identity of Rivera-Caldero's body, and/or late verification and/or lack of verification provided to the body by their personnel. They are also liable for the lack of supervision of the personnel who interacted with Rivera-Caldero's body; negligence in coordinating delivery and collection of the body; for the lack of follow-up and monitoring in the delivery and collection of the body in violation of its own protocols and the best institutional practice; for not providing competent and adequate personnel to handle Rivera-Caldero's body; for not referring and/or providing measures to prevent the wrongful exchange of corpses; for not transferring the body to the Hernández Funeral Home as authorized by Mrs.

Nieves-Ríos; for allowing deficient documentation of the medical record/file and/or alteration and manipulation of it, among others. The negligent acts and omissions of its medical, technical, and administrative staff caused and/or contributed to the damages suffered by the plaintiffs.

89.     The staff of the Mennonite Hospital, Valle de Paz and Jardín del Edén failed to responsibly verify the identity of Rivera-Caldero's body, and this caused and/or contributed to the harmful effects described above.

90.     A   severe   lack   of   communication   between   the   personnel   of Mennonite Hospital and the staff of Valle de Paz and Jardín del Edén directly contributed to or caused the damages asserted by the plaintiffs.

91.     The  defendants did not exercise the care or provisional measures that a prudent and reasonable person would deploy, which the applicable standards under the circumstances of this case required, by failing to offer the required identity verification using as a criterion the generally recognized practice, which in light of modern means of communication and education, and in accordance with the state of knowledge of science and prevailing practice, meets the generally recognized demands of the profession, and therefore deviated from the best practice.

92.     Pursuant to Article 1540 of the Puerto Rico Civil Code of 2020, the Mennonite Hospital and the staff of Valle de Paz, Jardín del Edén and Unknown Persons X, Y, Z are liable for the damages caused by them, as well as vicariously liable for the negligent acts or omissions of its personnel who negligently caused the damages to the plaintiffs.

93.     The codefendants are jointly and severally liable for the damages suffered by the plaintiffs.

94.     Specifically, the co-defendants are liable pursuant to the provisions of Articles 1536 and 1540 of the Civil Code of Puerto Rico of 2020.

95.     Under the insurance policies in effect at the time of the negligent acts or omissions alleged in this action, the co-defendants' insurance companies are directly liable for the damages claimed in this Action.

### B. SECOND CAUSE OF ACTION:
### Institutional Negligence and Commercial Liability

96.     All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

97.     The staff of the Mennonite Hospital had an obligation to deliver Mr. Rivera-Caldero's body to the Hernández Funeral Home, but they did not do so.

98.     Valle de Paz did not have authorization to remove Mr. Rivera-Caldero's body from Mennonite Hospital, but did so.

99.     Valle de Paz or Jardín del Eden did not have authorization to cremate Mr. Rivera-Caldero's body, but they did.

100.    Mennonite Hospital staff had the obligation to handle Mr. Rivera-Caldero's body in a safe and dignified manner, but they did not do so.

101.    The staff of Mennonite Hospital had the obligation to ensure that Mr. Rivera-Caldero's body had not been delivered to any funeral home other than Hernández Funeral Home, but they failed to do so.

102. Valle de Paz nor Jardín del Edén had the obligation to ensure that Mr. Rivera-Caldero's body was not cremated before 48 hours had transpired after his death, but they did so regardless.

103. The staff of Mennonite Hospital, Valle de Paz and Jardín del Edén and their employees failed to create, maintain, develop, update and disseminate adequate regulations, policies, protocols and procedures to safeguard the security and proper identification of Mr. Rivera-Caldero's body. In the alternative, Mennonite Hospital, Valle de Paz and Jardín del Edén and their employees failed to comply with their internal regulations, policies, protocols, and procedures.

104. The staff of Mennonite Hospital, Valle de Paz and Jardín del Edén and its employees had the obligation to supervise, monitor and ensure compliance with the regulations, policies, protocols, and procedures required by law to safeguard the security and adequate identification of the Mr. Rivera-Caldero's body.

105. Upon information and belief, through negligent actions and omissions, Mennonite Hospital, Valle de Paz y Jardín del Edén and its employees failed to comply with their obligation to create, maintain, update and disseminate adequate regulations, policies, protocols and procedures required by law to safeguard the security and proper identification of Mr. Rivera-Caldero's body.

106. Upon information and belief, Mennonite Hospital, Valle de Paz and Jardín del Edén and its employees negligently failed to monitor and ensure compliance with the regulations, policies, protocols, and procedures required by law to safeguard the safety and proper identification of the body of Mr. Rivera-

Caldero. Among other things, they negligently failed to ensure that the personnel who interacted with Mr. Rivera-Caldero's body had adequate preparation, experience, and training to provide appropriate and diligent care.

107.    The co-defendants also respond to the plaintiff for the negligent coordination with the funeral staff and for failing to adequately monitor transportation of the body during obvious acts of negligence, as in this case, and for failing to intervene as required to provide for the necessary care to Mr. Rivera-Caldero's body.

108.    Due to the negligence of Mennonite Hospital, Valle de Paz and Jardín del Edén and their employees, the plaintiffs have faced and will continue to face hardships of the worse imaginable kind.

109.    Mennonite Hospital, Valle de Paz and Jardín del Edén and their employees are jointly and severally liable for the damages that their negligence has caused the plaintiffs. Specifically, they are liable under Article 1536 of the Civil Code of Puerto Rico of 2020.

110.    Under the insurance policies in effect at the time of the negligent acts or omissions alleged in this action, the co-defendants' insurance companies are directly liable for all damages claimed in this Action.

### C. THIRD CAUSE OF ACTION:
### Commercial Liability for Clerical Errors

111.    All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

112.    By not maintaining an adequate file, the staff of the Mennonite Hospital, Valle de Paz and Jardín del Edén generated incorrect documentation

regarding the identity of Mr. Rivera-Caldero's body, thus incurring clerical errors and failure to communicate basic and simple information.

113. The clerical errors committed by Mennonite Hospital, Valle de Paz and Jardín del Edén caused or contributed to Mr. Rivera-Caldero's body being delivered to the wrong funeral home and his body being wrongfully cremated without authorization.

114. The clerical errors committed by Mennonite Hospital, Valle de Paz and Jardín del Edén and the negligent failure to communicate basic and simple information, coupled with the acts and omissions of all codefendants, negligently caused plaintiffs' damages.

115. Under the insurance policies in effect when the acts and omissions alleged in this case occurred, Insurance Companies A, B and C and all other insurance companies named as parties to this case are liable for the damages claimed in this lawsuit.

## C. FOURTH CAUSE OF ACTION:
### Direct Action Against The Unknown Insurance Companies A, B, & C

116. All the allegations stated above are incorporated by reference as if fully set forth and restated herein.

117. The Puerto Rico Direct Action Statute allows tort victims to seek redress directly from an insurance company such as the currently Unknown Insurance Companies A, B & C.

118. The direct action against the insurer is independent, but the damages sought "are based on the same factual situation and stem from the fault or negligence of the insured." Fraticelli v. St. Paul Fire and Marine Insurance Co., 375 F.2d 186, 188. (1st Cir. 1967).

119.    Under the Puerto Rico Direct Action Statute, the Unknown Insurance Companies A, B & C are contractually responsible to redress the damages negligently caused by their insureds, as claimed in the Complaint.

## VI. DAMAGES

120.    The co-defendants are jointly and severally liable for no less than $400,000 for the past and future emotional damages and mental anguish suffered by Mrs. Nieves-Ríos as a result of the negligent acts and omissions described in this lawsuit.

121.    The co-defendants are jointly and severally liable for not less than $400,000 for the past and future emotional damages and mental anguish suffered by Mr. Víctor J. Rivera-Nieves as a result of the negligent acts and omissions described in this lawsuit.

122.    The co-defendants are jointly and severally liable for not less than $400,000 for the past and future emotional damages and mental anguish suffered by Ms. Vicmarie Rivera-Nieves as a result of the negligent acts and omissions described in this lawsuit.

123.    The co-defendants are jointly and severally liable for not less than $400,000 for the past and future emotional damages and mental anguish suffered by Mr. Víctor M. Rivera-López as a result of the negligent acts and omissions described in this lawsuit.

124.    The co-defendants are jointly and severally liable for not less than $400,000 for past and future emotional damages and mental anguish suffered by Mr. Alexander Rivera-Nieves as a result of the negligent acts and omissions described in this lawsuit.

125.     The co-defendants are jointly and severally liable for not less than $400,000 for the past and future emotional damages and mental anguish suffered by Ms. Luz M. Rivera-Caldero as a result of the negligent acts and omissions described in this lawsuit.

126.     The co-defendants are jointly and severally liable for not less than $75,000 in special damages consistent with expenses incurred in preparation for funeral services, including, but not limited to, purchase of air tickets, accommodations, clothing for the deceased, room for the service, and other preparations, all as a consequence of the negligent acts and omissions described in this lawsuit.

## VII.   JURY TRIAL DEMAND

127.     Pursuant to Fed. R. Civ. P. 38(b), jury trial is respectfully requested as to all triable issues.

## VIII.   RELIEF REQUESTED

128.     The value of the general and special damages the plaintiffs have suffered and will forever suffer due to codefendants' negligence exceeds $2,475,000.00.

129.     Compensation in excess of that amount is warranted and requested.

130.     Additionally, punitive damages against codefendants under the Puerto Rico Civil Code, 31 L.P.R.A. §15538 are warranted and requested.

131.     In the event that codefendants deny their liability for the negligent acts and omissions giving rise to the claims set forth in this action as well as for the ensuing damages, the imposition of pre-judgment and post-judgment

interest, costs and attorney's fees at the maximum rate allowed by law will be warranted and requested.

**WHEREFORE,** Plaintiffs pray that a jury trial be held, and judgment entered in their favor and against all defendants, jointly and severally, for no less than the above-stated sums together with any other applicable remedy deemed just and proper under the facts and circumstances of this case.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of March 2024.

s/ Philippe O. Beauchamp-Oliveras
**PHILIPPE O. BEAUCHAMP-OLIVERAS**
USDC-PR No. 305207
*Attorney for Plaintiffs*
1607 Ave. Ponce de León
Edif. Cobian's Plaza Suite 304
San Juan, P.R. 00909
Phone: (787) 529-5441
Email: pbeauchamp.law@gmail.com
